IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ABDULLAH MALIK JOPPY,    *

  Petitioner,       *

v.            *   Civil Action No. GLR-19-1445

WARDEN RICHARD D. DOVEY,  *

  Respondent.      *

***

<u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Petitioner Abdullah Malik Joppy's (a/k/a Richard Lee Joppy) Petition for Writ of Habeas Corpus. (ECF No. 1). The matter is ripe for review and no hearing is necessary. <u>See</u> R. Govern. § 2254 Cases U.S. Dist. Ct. 8(a); 28 U.S.C. § 2254(e)(2); Local Rule 105.6 (D.Md. 2021); <u>see also</u> <u>Fisher v. Lee</u>, 215 F.3d 438, 455 (4th Cir. 2000) (noting that petitioners are not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons outlined below, the Court will deny the Petition and decline to issue a certificate of appealability.

I.   <u>BACKGROUND</u>

**A. <u>Facts Established at Trial</u>**

In 2014, the Federal Bureau of Investigation ("FBI") began a joint investigation with the Montgomery County Police Department into an individual named George Gee, who was distributing narcotics in the Bel Pre Square area. (Jan. 12, 2016 Trial Tr. ["Day One Tr."] at 149:10–50:9, ECF No. 9-3). In February 2015, FBI Agent Charles Adams applied for and obtained a wiretap on Gee's telephone to intercept audio calls and text

messages. (Id. at 153:19–55:10). The wiretap intercepted several calls from a phone number associated with Joppy in February and March of 2015. (Id. at 155:5–10, 164:13–65:14; see generally id. at 180–219). Officers involved in the investigation also surveilled Joppy on February 27, 2015 and captured him on video in the passenger seat of Gee's vehicle and interacting with a male juvenile, approximately fifteen years old, in a parking lot. (Jan. 13, 2016 Trial Tr. ["Day Two Tr."] at 66:12–68:24, 77:15–22, 84:10–93:19, ECF No. 9-4).

Joppy was the target of a search warrant executed on June 8, 2015 on an apartment on Teagarden Circle in Montgomery County, Maryland. (Day One Tr. at 220:13–22:5). Joppy and his girlfriend were in the apartment when the search occurred at 5:00 a.m. (Jan. 14, 2016 Trial Tr. ["Day Three Tr."] at 113:9–19, ECF No. 9-5; Day Two Tr. at 128:16–33:2). Officers seized a pill bottle containing 4.91 grams of cocaine and a scale from the closet in the master bedroom. (Day Two Tr. at 15:14–17, 132:3–19, 135:22–24). Officers found the scale inside a suitcase and the pill bottle inside a jacket pocket. (Id. at 135:12–36:24, 139:2–11). Officer David Crowley then placed Joppy under arrest. (Id. at 154:8–55:10).

On January 12 to 14, 2016, Joppy was tried by jury on one count of possession with the intent to distribute cocaine and one count of conspiracy to possess cocaine with the intent to distribute. (State R. at 8–11, ECF No. 9-1). The jury heard testimony from the officers involved in the investigation and wiretap calls between Gee and Joppy. (See generally Day One Tr. at 149–219). The State called an expert in drug trafficking to explain the wiretap calls and surveillance to the jury. (Day Three Tr. at 12:18–95:5). The expert

explained that the language used between Joppy and Gee during the phone calls constituted interactions arranging drug deals, including the availability of drugs, (id. at 70:17–21), the weight of drugs ordered, (id. at 45:7–14, 71:23–72:1), the meeting location, (id. at 48:24–50:2, 54:17–55:4, 70:21–71:4), and the person conducting the drug deal, (id. at 57:13–24). The expert testified that a phone call between Gee and Joppy on March 4, 2015, during which Gee said he would be "sending his son out," corresponded to the surveillance conducted by officers who observed Joppy meet with a juvenile in a parking lot. (Id. at 57:13–58:15). The expert also testified that Joppy placed a call to Gee after the interaction with the juvenile confirming that he obtained two packages from the juvenile containing $300 worth of drugs. (Id. at 59:15–61:9). The expert testified that $300 is the street value for seven grams of crack cocaine, or two "eight balls." (Id. at 60:8–61:9). The expert also testified that the surveillance capturing Joppy in Gee's vehicle was consistent with a drug deal. (Id. at 73:10–74:15).

On January 14, 2016, the jury convicted Joppy of possession with the intent to distribute cocaine and conspiracy to possess cocaine with the intent to distribute. (Id. at 207:2–12). Joppy was sentenced on April 14, 2016 to seventeen years' imprisonment on each count. (State R. at 13). The sentences run concurrently. (Id.).

**B.** **Direct Appeal**

Joppy filed an application for leave to appeal his convictions on May 4, 2016, in which he raised two claims: (1) the trial court erred in denying his motion to suppress because there was not a substantial basis for the warrant; and (2) the trial court erred in denying the motion for acquittal because there was insufficient evidence to support the

conviction for possession with intent to distribute. (State R. at 28–87). On April 27, 2017, the Court of Special Appeals affirmed the convictions. See Joppy v. State, 158 A.3d 1112 (2017). Although Joppy failed to preserve the argument that there was a lack of a sufficient nexus between the criminal activities and Joppy's residence to support the issuance of a warrant, the Court of Special Appeals engaged in a lengthy discussion of the issue and determined:

> Were this issue of nexus properly before us, we would not hesitate to hold that Magistrate Judge Connelly had a substantial basis for concluding that the warrant application adequately established a nexus between the criminal activities of [Joppy] and 3320 Teagarden Circle, Apartment 104.

(Id. at 1123). The Court of Special Appeals also held that the evidence was legally sufficient to support a conviction of possession of cocaine with the intent to distribute. (Id. at 1133). The Maryland Court of Appeals denied Joppy's petition for a writ of certiorari on July 28, 2017. (State R. at 161).

## C.   Post-Conviction Proceedings

On September 13, 2017, Joppy initiated post-conviction proceedings by filing a pro se petition under Maryland's Uniform Postconviction Procedure Act, Md. Code Ann., Crim. Proc. ("CP") § 7-101 et seq. ("UPPA"). (State R. at 162–73). Joppy asserted that trial counsel was constitutionally ineffective for: (1) failing to "challenge the allegations that the Petitioner agreed to conspire to distribute drugs with a George Gee"; (2) failing to "challenge the conflicting statements in the surveillance report and the Affidavit Application for Search Warrant"; (3) failing to "raise the nexus requirement at the motion to suppress hearing and during trial"; and (4) "tamper[ing] with evidence." (Id. at 163–64).

Joppy also argued that: (1) the State failed to properly authenticate a document pursuant to Maryland Rule 5-902; (2) the judge abused her discretion in permitting the State to remove flight tags from a suitcase that was admitted into evidence; (3) the State's expert did not meet the requirements of Maryland Rule 5-704(b); (4) the State admitted hearsay evidence in violation of Maryland Rule 5-802; (5) the chain of custody for the drug evidence was not properly established; (6) the affidavit submitted for the search warrant was the product of a "sloppy" investigation; and (7) there was not a substantial basis for issuance of the search warrant. (Id. at 164–71). The Circuit Court for Montgomery County, Maryland (the "Circuit Court") held a hearing on Joppy's post-conviction application on July 20, 2018. (Post-Conviction Relief Hr'g Tr. ["Post-Conv. Tr."] at 1, ECF No. 9-7). Joppy was the sole witness called to testify. (See id. at 11:20–62:20).

The Circuit Court denied post-conviction relief on September 27, 2018. (State R. at 181–82). The ruling denied all claims on procedural grounds, except for Joppy's ineffective assistance of counsel claims. The Circuit Court found that Joppy's ineffective assistance of counsel claims were "finally litigated by the Court of Special Appeals." (Id. at 181). Joppy filed a timely application for leave to appeal. (Id. at 183–90). The Court of Special Appeals summarily denied his application for leave on April 24, 2019. (Id. at 191–93).

**D.**   **Federal Habeas Petition**

Joppy, who is proceeding pro se, filed his Petition for Writ of Habeas Corpus on May 16, 2019. (ECF No. 1). In the Petition, Joppy argues: the search warrant lacked a substantial basis because the affidavit did not establish a nexus between the alleged criminal conduct and the residence to be searched (Claim 1); trial counsel was ineffective

when he failed to challenge the legal sufficiency of the evidence to support "conspiracy of constructive possession" (Claim 2.a); trial counsel was ineffective because he failed to challenge the conflicting statements in the surveillance report and the affidavit application for search warrant (Claim 2.b); trial counsel was ineffective because he failed to raise the "nexus" argument at the motion to suppress hearing and during trial (Claim 2.c); trial counsel was ineffective because he tampered with evidence (Claim 2.d); the State failed to authenticate the phone records from Sprint (Claim 3); the trial court abused its discretion by allowing the suitcase to be admitted into evidence after the flight tags were removed (Claim 4); the State's expert witness failed to meet the standards of Maryland Rule 5-704(b) (Claim 5); and the trial court erred in denying the motion for acquittal because the State presented insufficient evidence that he possessed cocaine with the intent to distribute and that he participated in a conspiracy to possess cocaine with the intent to distribute (Claim 6). (Pet. at 4–6, ECF No. 1).

Respondents filed an Answer to the Petition on August 5, 2019, contending that all claims except the ineffective assistance of counsel claims are procedurally defaulted. (ECF No. 9). On August 9, 2019, the Court advised Joppy of his right to file a reply demonstrating that his claims are not procedurally defaulted or that he is otherwise entitled to have those claims reviewed. (ECF No. 10). Joppy filed a Reply on September 20, 2019, (ECF No. 11), and supplemented the Reply on January 4, 2021, (ECF No. 12).

## II.    <u>DISCUSSION</u>

### A.    <u>Procedural Default</u>

Before seeking review under 28 U.S.C. § 2254, a person in custody must exhaust remedies available in state court by presenting each claim to the appropriate state court. A claim is procedurally defaulted when a petitioner has failed to present the claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal. <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 749–50 (1991) (failure to note timely appeal); <u>Murray v. Carrier</u>, 477 U.S. 478, 489–91 (1986) (failure to raise claim on direct appeal); <u>Murch v. Mottram</u>, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction proceedings); <u>Bradley v. Davis</u>, 551 F.Supp. 479, 481 (D.Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).

A procedural default may also occur where a state court declines "to consider the[] merits [of a claim] on the basis of an adequate and independent state procedural rule." <u>Yeatts v. Angelone</u>, 166 F.3d 255, 260 (4th Cir. 1999). As the United States Court of Appeals for the Fourth Circuit has explained, "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." <u>Breard v. Pruett</u>, 134 F.3d 615, 619 (4th Cir. 1998). Under Maryland law, "an allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the

allegation . . . in a prior [post-conviction] petition." CP § 7-106(b)(1)(i). A rebuttable

presumption exists that this waiver was knowing and intelligent. CP § 7-106(b)(2).

Procedurally defaulted claims are not subject to substantive federal habeas corpus

review unless certain exceptions apply to excuse the procedural default. Procedural default

may be excused if a petitioner can demonstrate (1) both "cause" for the procedural

default <u>and</u> that he will suffer "prejudice" if the claims are not considered on their merits;

or (2) that failure to consider the defaulted claim(s) would result in a miscarriage of justice,

i.e., the conviction of someone who is actually innocent of the offenses. <u>See</u> <u>Murray</u>, 477

U.S. at 495–96; <u>Breard</u>, 134 F.3d at 620. "Cause" consists of "'some objective factor

external to the defense [that] impeded counsel's efforts' to raise the claim in state court at

the appropriate time." <u>Breard</u>, 134 F.3d at 620 (quoting <u>Murray</u>, 477 U.S. at 488).

"Prejudice" exists if a petitioner can show not merely that the alleged errors "created a

<u>possibility</u> of prejudice, but that they worked to his <u>actual</u> and substantial disadvantage,

infecting [the] entire [proceeding] with error of constitutional dimensions." <u>United States</u>

<u>v. Frady</u>, 456 U.S. 152, 170 (1982).

Alternatively, the Court may reach a defaulted claim if the petitioner shows that

failure to review the claim would result in a miscarriage of justice, that is, conviction of an

individual who is actually innocent. <u>See</u> <u>Murray</u>, 477 U.S. at 495–96; <u>Breard</u>, 134 F.3d at

620. "[W]here a constitutional violation has probably resulted in the conviction of one who

is actually innocent, a federal habeas court may grant the writ even in the absence of a

showing of cause for the procedural default." <u>Murray</u>, 477 U.S. at 496; <u>see also</u> <u>Reid v.</u>

<u>True</u>, 349 F.3d 788, 806 (4th Cir. 2003). Assertions of actual innocence used as a gateway

to review an otherwise defaulted claim must be supported by new evidence that demonstrates no reasonable juror could have convicted the petitioner. See Buckner v. Polk, 453 F.3d 195, 199–200 (4th Cir. 2006).

The record reflects that some of Joppy's claims before this Court were dismissed on state procedural grounds.[1] The Court of Special Appeals expressly recognized that Joppy failed to appeal the sufficiency of the evidence to support his conspiracy conviction (part of Claim 6). Joppy, 158 A.3d at 1132. The Circuit Court also expressly dismissed the following claims because they were not "raised at trial": the State failed to properly authenticate the Sprint telephone records (Claim 3); the judge abused her discretion by allowing the introduction of the suitcase without the airline flight tags (Claim 4); and the State's expert witness did not meet the requirements of Maryland Rule 5-704(b) (Claim 5) (Pet. at 4–5; State R. at 181–82). Under Maryland law, "an allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation . . . at trial [or] on direct appeal, whether or not the petitioner took an appeal." CP § 7-106(b)(1)(i)(2) & (3). A rebuttable presumption exists that this waiver is knowing and intelligent. CP § 7-106(b)(2).

---

[1] The Court of Special Appeals determined that Joppy waived his argument that there was not a substantial basis for the search warrant because of a lack of a nexus between the residence and the criminal activity (Claim 1), but went on to alternatively address the merits of the argument. See Joppy, 158 A.3d at 1115–16. When a state court addresses the merits of the federal question but also invokes a state procedural bar, the independent and adequate state ground doctrine applies. See Ashe v. Styles, 39 F.3d 80, 86 (4th Cir. 1994). Respondents have not invoked the independent and adequate state ground doctrine as a defense to Claim 1. Accordingly, the Court will address the argument made by Respondents that the claim is not cognizable in federal habeas review.

In his initial Reply, rather than explain why these claims should be considered, Joppy merely reiterates his arguments regarding why and how each claim presented here is meritorious. (See generally ECF No. 11). In his supplemental Reply, Joppy attaches a document he deems to be "newly discovered evidence" and "the identical Sprint account (document) as exhibit #1; that show[s] there is no billing address with [Joppy's] name." (Mem. Re: Newly Discovered Evid. at 1, ECF No. 12).

"[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A habeas corpus applicant may overcome procedural default by clear and convincing evidence that the state court relied upon an incorrect factual determination when applying an independent and adequate state bar. See Mahdi v. Stirling, 20 F.4th 846, 895 (4th Cir. 2021). Neither Joppy nor Respondents address the fact that the Circuit Court dismissed Claim 3 and Claim 5 because they were not "raised at trial" when the trial record unequivocally establishes otherwise. (Day One Tr. at 155–65; Day Three Tr. at 30–35, 45–46). Because Joppy's trial counsel did, in fact, object at trial, the presumption in 28 U.S.C. § 2254(e)(1) is rebutted and these claims will be addressed on the merits de novo. See Lenz v. Washington, 444 F.3d 295, 302 (4th Cir. 2006).

The Court lastly considers whether Joppy has established the applicability of any of the exceptions to procedural default that would allow the defaulted claims, to wit, Claim 4 and the part of Claim 6 pertaining to sufficiency of the evidence on the conspiracy conviction, to proceed. The Court sees none. Joppy has offered nothing to establish that a

fundamental miscarriage of justice would result if this Court does not reach the merits of these claims. In his first supplemental response Joppy states, "Why Petitioner is Innocent," and proceeds to discuss the merits of his habeas claims. To the extent that this passing reference could be construed as Joppy invoking "actual innocence" to excuse his defaulted claims, the attempt fails. In McQuiggin v. Perkins, 569 U.S. 383 (2013), the United States Supreme Court cautioned that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" Id. at 386 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). The new evidence must do more than undermine the finding of guilt; it must affirmatively demonstrate innocence. Phillips v. Ferguson, 182 F.3d 769, 774 (10th Cir. 1999). To invoke the actual innocence exception, a petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, 513 U.S. at 327.

Joppy argues that the evidence against him was circumstantial, (Answer Resp't Writ Habeas Corpus ["Reply"] at 15–17, ECF No. 11), the document used to identify him as the caller on the wiretaps was not properly authenticated, (id. at 16), there was no nexus to connect him to the drug distribution network to justify issuance of a search warrant, (id. at 17), and the evidence does not support a finding of guilt, (id. at 19). These contentions challenge the sufficiency of the evidence, which cannot support an actual innocence claim. See Bousley v. United States, 523 U.S. 614, 623 (1998) ("It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency.");

Anthony v. Schuppel, 86 F.Supp.2d 531, 538 (D.Md. 2000) (reiteration of arguments regarding sufficiency of evidence at trial is not new evidence upon which an actual innocence claim may be based).

The "new evidence" produced by Joppy in his second supplemental response does not affirmatively demonstrate innocence. The document provided by Joppy is associated with a _different_ telephone number than the one intercepted on the wiretap calls and identified at trial as Joppy's number. (See Day One Tr. at 155–65 (identifying 202-271-2553 as the telephone number intercepted during the wiretap and associated with the Sprint records entered at trial); Pet. Phone R. at 1, ECF No. 12-1 (referencing 202-271-2342 as the subject telephone number in the evidence submitted by Joppy)). This document falls short of meeting the standard of affirmatively demonstrating innocence. Accordingly, Claim 4 and the part of Claim 6 pertaining to sufficiency of the evidence on the conspiracy conviction are procedurally defaulted.

**B.    Merits Review**

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute sets forth a "highly deferential standard for evaluating state-court rulings." Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997); accord Bell v. Cone, 543 U.S. 447, 455 (2005). The standard is "difficult to meet" and requires courts to give state-court decisions "the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted); see also White v. Woodall, 572 U.S. 415, 419–20 (2014) (finding that a state prisoner must show that the state court ruling on the claim presented in federal court was "so lacking in

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement" (quoting Harrington v. Richter, 562 U.S. 86, 101 (2011))).

A federal court may not grant a writ of habeas corpus unless the state court's adjudication on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of that decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." Id. (quoting Williams, 529 U.S. at 410).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010). Thus, "even if [r]easonable minds

reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. Id. (internal quotation marks and citation omitted). Similarly, "a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting Williams, 529 U.S. at 411).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." Id. (quoting Wilson v. Ozmint, 352 F.3d 847, 858 (4th Cir. 2003)).

### 1.    Claim 1: Lack of Substantial Basis for Search Warrant

In his first claim, Joppy contends that the search warrant that yielded the drug and paraphernalia evidence against him at trial lacked a substantial basis. (Pet. at 4). Respondents argue that Joppy's claim is not cognizable in habeas pursuant to Stone v. Powell, 428 U.S. 465 (1972). In Stone, the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas

corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 482. The Supreme Court explained that the purpose of excluding evidence obtained in violation of the Fourth Amendment is to deter misconduct of law enforcement officers conducting the searches. Id. at 490–92. Providing an additional avenue for exclusion of evidence through federal habeas relief is unlikely to deter misconduct. Id. at 493. Accordingly, the proper focus is on whether the Fourth Amendment claim was previously given full and fair consideration in the state courts. Id. at 494.

The Circuit Court held a hearing on Joppy's pretrial Motion to Suppress on December 5, 2015. (ECF No. 9-2). Joppy's trial counsel argued that the search warrant should not have been issued because it lacked sufficient probable cause. As discussed above, Joppy argued on direct appeal that the search warrant should not have been issued because an insufficient nexus existed between Joppy's alleged criminal activity and the residence searched. Joppy, 158 A.3d at 1114. After initially determining that Joppy had waived the "nexus" argument by failing to raise it before the trial court, id. at 1115–16, the Court of Special Appeals addressed the merits of Joppy's argument regarding the search warrant and determined that a substantial basis existed for concluding that the warrant application adequately established a nexus between the alleged criminal activities and the residence. Id. at 1123.

The record reflects that Joppy was afforded a full and fair opportunity, twice, to litigate his Fourth Amendment claim in state court. Joppy's claim regarding the search warrant is not cognizable in habeas under Stone.

###### 2.  Claim 2: Ineffective Assistance of Counsel

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984); accord Buck v. Davis, 137 S.Ct. 759, 775 (2017). To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in Strickland, 466 U.S. at 687–88. See Williams, 529 U.S. at 390. That test requires the petitioner to show that (a) his counsel's performance was deficient, and (b) he was prejudiced by the deficient performance. Strickland, 466 U.S. at 687; accord Buck, 137 S.Ct. at 775.

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." Strickland, 466 U.S. at 688; accord Harrington, 562 U.S. at 104. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at 105 (quoting Strickland, 466 U.S. at 690). The "first prong sets a high bar." Buck, 137 S.Ct. at 775. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" Id. (quoting Strickland, 466 U.S. at 690). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." Id. at 687. To satisfy the "prejudice prong," a petitioner must

show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; accord Buck, 137 S.Ct. at 776. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. Strickland, 466 U.S. at 694. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. Id. at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." Berghuis v. Thompkins, 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in Strickland, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697. Nor must a court address both components if one is dispositive. Jones v. Clarke, 783 F.3d 987, 991–92 (4th Cir. 2015). Because either prong is fatal to a petitioner's claim, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

Joppy alleges in his Petition that his trial counsel was constitutionally ineffective because (a) he failed to challenge the legal sufficiency of the evidence to support "conspiracy of constructive possession"; (b) he failed to challenge the conflicting statements in the surveillance report and the affidavit application for search warrant; (c) he failed to raise the nexus requirement at the motion to suppress hearing and during trial; and (d) he tampered with evidence. (Pet. at 4).

As an initial matter, the Court will address the appropriate standard of review for Joppy's ineffective assistance of counsel claims. When the Circuit Court dismissed Joppy's post-conviction application, it did not specifically address Joppy's ineffective assistance of counsel claims, labeled in his post-conviction petition as "1B," "1C," and "1D" and included in his federal habeas petition as "2B," "2C," and "2D." It appears that the Circuit Court construed these claims as sub-parts of Joppy's claim that counsel failed to challenge the sufficiency of the evidence. The Circuit Court addressed the totality of Joppy's ineffective assistance of counsel claims by finding that Joppy's "claim that trial counsel rendered ineffective assistance of counsel by failing to challenge the sufficiency of the evidence has already been finally litigated by the Court of Special Appeals." (State R. at 181).

The Circuit Court specifically dismissed Joppy's ineffective assistance of counsel claims based on the Court of Special Appeals' opinion. But the Court of Special Appeals' opinion did not address any ineffective assistance of counsel claims. Furthermore, the only sufficiency of evidence claim addressed in the opinion was related to Joppy's conviction on <u>possession</u>. In fact, the Court of Special Appeals specifically noted that Joppy had not

appealed the sufficiency of the evidence related to his conviction on conspiracy. See Joppy, 158 A.3d at 1132. Joppy's post-conviction application specifically claimed his counsel was ineffective by failing to challenge the sufficiency of the evidence on his conspiracy conviction. (State R. at 163). The Circuit Court thus relied on an incorrect factual determination in dismissing Joppy's ineffective assistance of counsel claims and the presumption in 28 U.S.C. § 2254(e)(1) is rebutted. Joppy's ineffective assistance of counsel claims, which have not been previously addressed on the merits, will be reviewed de novo.

### a.   Failure to challenge sufficiency of evidence to support conspiracy conviction

Joppy alleges, "[d]efense counsel rendered ineffective assistance when he failed to challenge the legal sufficiency of the evidence to support conspiracy of constructive possession during a three month old investigation by not challenging the FBI agents observation, accuracy nor pertinence about the close connection between the high-level drug dealer and the petitioner's residence to the search." (Pet. at 4). Joppy testified during the post-conviction hearing that his counsel should have challenged his connection to the residence searched because he was only in the apartment one time. (Post-Conv. Tr. at 17:6– 18:10).

At the close of the State's case, Joppy's trial counsel moved for acquittal on the grounds that there was insufficient evidence for a conviction. (Day Three Tr. at 96:3– 97:16). Trial counsel argued that by the time the cocaine was seized on June 8, 2015, Joppy had not been in contact with the target of the investigation, Gee, since April 9, 2015. (Id.

at 96:3–20). Counsel did not argue that Joppy had only been at the residence one time. But the affidavit of probable cause for the search warrant completed by FBI Agent Charles Adams averred, "law enforcement officers have observed Joppy routinely entering and exiting SUBJECT PREMISE #1." Joppy, 158 A.3d at 1119. The failure to introduce evidence or present an argument that could be refuted by testifying law enforcement officers does not amount to deficient performance. See Sharpe, 593 F.3d at 383 (counsel is not required to advance futile arguments).

In any event, Joppy cannot show prejudice. The jury heard multiple wiretap calls between Gee and Joppy discussing the details of drug deals, testimony from officers who conducted surveillance on Joppy and witnessed what appeared to be drug transactions, and expert testimony explaining that the nature and purpose of the communications between Joppy and Gee were to facilitate drug deals. The jury also heard evidence that Joppy was seen coming and going from the Teagarden Circle apartment and was sleeping in the master bedroom during the execution of the search warrant that yielded the drug evidence. A refutable argument that Joppy may have been a casual overnight guest at the Teagarden Circle apartment does not undermine confidence in the outcome of Joppy's trial in light of the substantial evidence presented that Joppy was both a participant in a drug conspiracy and in possession of cocaine with the intent to distribute. Thus, counsel was not ineffective by failing to argue about Joppy's connection with the residence.

### b.    Failure to challenge the conflicting statements in the surveillance report and the affidavit application for search warrant

Next, Joppy claims that his counsel was ineffective because he "failed to challenge the conflicting statements in the surveillance report and the affidavit application for search warrant." (Pet at 4). Joppy testified at the post-conviction hearing that his trial counsel should have put on evidence at trial that the search warrant affidavit said Officer Chimmel saw him leaving the apartment complex on March 4, 2015 in a silver Acura, but the surveillance report said he left the apartment complex in a blue Honda. (Id. at 18–19). Joppy also testified that his trial counsel should have pointed out that Officer Chimmel said he observed Joppy entering the apartment complex at 5:15 p.m. and leaving at 5:45 p.m., but the wiretap system said that he was on a phone call at 5:43 p.m. at the traffic light on Good Hope Road. (Id. at 19–21).

The Court of Special Appeals' opinion quotes from the affidavit submitted for the search warrant, which states that Joppy exited the apartment complex on March 4, 2015 in a "green Honda sedan" and "[a]t 5:43 p.m., [Joppy] placed a follow-up call to George Gee." Joppy, 158 A.3d at 1118. Officer Chimmel testified at trial that he saw Joppy enter the apartment complex on March 4, 2015 in a blue Honda at 5:15 p.m. and exit in a silver Acura at 5:45 p.m. (Day Two Tr. at 75–78). Joppy's trial counsel referenced the arrest warrant allegations during the Motion to Suppress hearing, pointing to the fact that Joppy was seen exiting the apartment complex two minutes before a wiretap phone call where he allegedly stated he was at the traffic light on Good Hope Road. (Mot. Hr'g Tr. at 9–10, ECF No. 9-2).

Joppy's trial counsel did not question Officer Chimmel at trial about the discrepancy regarding the make and color of the vehicle Joppy was seen driving or the time discrepancy between the surveillance and the wiretap call. Joppy's trial counsel did not testify as a witness during the post-conviction hearing, so the Court does not have the benefit of an explanation of any potential strategy. In any event, Joppy cannot demonstrate that he was prejudiced by trial counsel's failure to question Officer Chimmel on these two points. As discussed supra, significant evidence was introduced at trial both tying Joppy to the drug conspiracy and demonstrating that he possessed cocaine with the intent of distribution. The failure of counsel to raise these minor discrepancies does not undermine confidence in the outcome of the trial.

### c.   Failure to raise the nexus requirement at the motion to suppress hearing and during trial

Joppy also claims that his counsel was ineffective because he failed to argue during the Motion to Suppress hearing and at trial that the search warrant was invalid because the affidavit did not demonstrate a nexus between the residence and the alleged criminal activity. (Pet. at 4). This argument was the subject of the lengthy opinion issued by the Court of Special Appeals. See Joppy, 158 A.3d 1112. The Court of Special Appeals determined that Joppy's counsel had not raised the "nexus" argument at the Circuit Court but addressed the merits of the argument anyway. Id. at 1115–16. Citing state and federal opinions, the Court of Special Appeals held that the nexus argument lacked merit because the "totality of the circumstances" test supported a substantial basis for the warrant. Id. at 1116–23. Joppy has not provided the Court with any authority supporting his Fourth

Amendment claim. Accordingly, he cannot demonstrate prejudice. See <u>Kimmelman v.</u> <u>Morrison</u>, 477 U.S. 365, 375 (1986) ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious . . . .").

### d.    Tampering with evidence

Joppy also claims his counsel was ineffective because his counsel "tampered with evidence." (Pet. at 4). During the trial testimony of FBI Agent Shayne Buchwald, the defense introduced into evidence the suitcase containing the seized scale. (Day Two Tr. at 149:1–50:3). After Agent Buchwald was excused, the State objected to introduction of the airline flight tags attached to the suitcase, arguing that the tags were not attached at the time of seizure. (<u>Id.</u> at 156:24–60:9). The trial judge compared the flight tags to the photo taken at the time of the seizure and agreed the tags should be removed because they did not appear in the photo. (<u>Id.</u> at 159:6–60:10).

Later, the State accused defense witness, Victoria Gaines, and Joppy's trial counsel of tampering with evidence by removing one of the flight tags before trial. (<u>See</u> Day Three Tr. at 118:25–19:11 ("Your honor, this witness tampered with evidence with the assistance of counsel. She's, I have her own jail call saying that tags were ripped off of the suitcase that would have harmed Mr. Joppy and thrown in the trash.")). Joppy's trial counsel denied tampering with evidence, stating that "[t]here was a tag on there that, that was from a later flight and I told her that that was not from, that would, that was from her daughter's flight in July. I didn't, I did not tamper with the evidence." (<u>Id.</u> at 119:18–22). Joppy's counsel advised the trial court that the removed tag, just like the other tags, had been removed

because it was not consistent with the way the suitcase appeared the day it was seized. (<u>Id.</u> at 126:18–27:3). The trial court sustained the defense's objection that the State was trying to put on evidence that Joppy's trial counsel tampered with evidence. (<u>Id.</u> at 133:2–3).

Joppy testified at the post-conviction hearing that his trial counsel should not have removed the flight tag before trial because it had a female's name on it, which showed that the suitcase did not belong to him. (Post-Conv. Tr. at 29:8–36:22). But considering <u>Strickland</u>'s deferential standard and the trial court's determination that the flight tags should not be submitted to the jury, Joppy cannot demonstrate that his counsel's actions amount to deficient performance. Further, considering the totality of the evidence of Joppy's involvement in the drug conspiracy, connection with the Teagarden Circle apartment, and physical presence in the Teagarden Circle apartment the morning it was searched, Joppy cannot demonstrate that he was prejudiced by his counsel's removal of the flight tag.

### 3.     Claim 3: State Failed to Self-Authenticate Business Record

In his third claim, Joppy contends that the State failed to properly authenticate the Sprint telephone records that associated his name with the telephone number intercepted on the wiretap of Gee's telephone. Joppy's counsel objected at trial that the Sprint records did not properly conform to the requirements for introduction of business records, but the trial court overruled the objection and accepted the records as evidence. (Day One Tr. at 155:11–65:13). Respondents contend that Joppy's claim is not cognizable for federal habeas review because it presents a state law evidentiary question. (Answer Pet. Writ Habeas Corpus ["Answer"] at 46–47, ECF No. 9).

In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Because Joppy's claim rests solely upon an interpretation of Maryland law, it is not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). In considering federal habeas corpus issues involving state evidentiary rulings, "we do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding." Burket v. Angelone, 208 F.3d 172, 186 (4th Cir. 2000). "It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented." Spencer v. Murray, 5 F.3d 758, 762 (4th Cir. 1993) (quoting Grundler v. State, 283 F.2d 798, 802 (4th Cir. 1960)). Joppy has failed to explain, and the Court's review of the record has failed to identify, how the introduction of the Sprint records implicates any federal right or deprived Joppy of a constitutionally fair proceeding.

### 4.    Claim 4: Impermissible Introduction of Evidence

As set forth supra in Section II.A, Claim 4 is procedurally defaulted. Accordingly, the Court need not address the claim on the merits.

### 5.    Claim 5: The State Expert Witness Did Not Meet the Standards of Maryland Rule 5-704(b)

In his fifth claim, Joppy contends that the State's expert did not meet the requirements of Maryland Rule 5-704(b) because he was not qualified to provide expert testimony interpreting the language used during the recorded telephone calls. During trial,

the State called Jason Cokinos as an expert in drug trafficking. (Day Three Tr. at 12:13–95:21). Joppy's trial counsel objected under Maryland Rule 5-704(b) because the State did not designate Cokinos as a language expert in its pretrial notice. (Id. at 31:9–35:7, 45:15–46:22). The trial court overruled the defense objection and permitted Cokinos to interpret the language used in the telephone calls. (Id. at 32:17–34:20, 46:8–16).

Respondents argue that this claim is a pure state law question not subject to federal habeas corpus review. The Court agrees. Joppy's fifth claim rests solely on the interpretation of Maryland Rule 5-704 and is not cognizable in federal habeas corpus review. See Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998).

### 6.      Claim 6: Trial Court Erred in Denying Motion for Acquittal

In his sixth claim, Joppy argues that the trial court erred when it denied the motion for acquittal on possession of cocaine with the intent to distribute and conspiracy to possess cocaine with the intent to distribute. As discussed above, Joppy has procedurally defaulted his sufficiency of the evidence claim with respect to the conspiracy conviction.

Though claims of insufficient evidence are cognizable on collateral review, a federal court's review of such claims is "sharply limited." Wright v. West, 505 U.S. 277, 296 (1992); see also Evans-Smith v. Taylor, 19 F.3d 899, 905 (4th Cir. 1994) ("The standard is obviously rigorous."). Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review. Wright, 505 U.S. at 292. Thus, a defendant is entitled to relief only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979); see also George v.

Angelone, 100 F.3d 353, 357 (4th Cir. 1996). The Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16.

Because the Court of Special Appeals adjudicated the sufficiency of the evidence to support Joppy's conviction of possession of cocaine with the intent to distribute on the merits, the Court must apply the deferential review standard established by the Antiterrorism and Effective Death Penalty Act of 1996, as codified at 28 U.S.C. § 2254(d). See Williams, 529 U.S. at 402–03. Joppy's jury received the following instruction on the elements of possession with the intent to distribute:

> Narcotics and controlled dangerous substance, possession with intent to distribute. The defendant is also charged with the crime of possession of cocaine, which is a controlled dangerous substance, with intent to distribute. A lesser included offense of this charge is possession of cocaine. In order to convict the defendant of possession of cocaine, the defendant, I'm sorry, the State must prove that the defendant knowingly possessed the substance, that the defendant knew the general character or elicit nature of the substance and, three, that the substance was cocaine.
>
> Possession means having control over a thing, whether actual or indirect. A person not in actual possession who knowingly has both the power and the intention to exercise control over a thing either personally or through another person has indirect possession.
>
> In determining whether the defendant had indirect possession of the substance, consider all of the surrounding circumstances. These circumstances include the distance between the defendant and the substance, whether the defendant had some ownership or possessory interest in the place where the substance was found, and any indications that the defendant was participating with others in the mutual use and enjoyment of a substance.

> In order to convict the defendant of the crime of possession of cocaine with intent to distribute, the State must prove that the defendant possessed cocaine and that the defendant possessed cocaine with the intent to distribute some or all of it. Distribute means to sell, exchange or transfer possession of the substance or to give it away. No specific quantity is required for you to find the intent to distribute. There is no specific amount below which the intent to distribute disappears and there is no specific amount above which the intent to distribute appears. You may consider the quantity of the controlled dangerous substance, along with all the other circumstances in determining whether the defendant intended to distribute the controlled dangerous substance.

(Day Three Tr. at 160:11–61:21).

Joppy has failed to show that no rational trier of fact could find him guilty beyond a reasonable doubt of possession with the intent to distribute cocaine. On direct appeal, the Court of Special Appeals found that the cocaine in the medicine bottle seized from the jacket in the closet of the master bedroom of the Teagarden Circle apartment satisfied the possession element. Joppy, 158 A.3d at 1132–33. Although Joppy and his girlfriend were both asleep in the apartment bedroom when the search warrant was executed, the Court of Special Appeals found that it was more likely that Joppy, as an active participant in the drug distribution network, possessed the drugs rather than his girlfriend, "against whom no such involvement had been demonstrated." Id. Furthermore, the Court of Special Appeals found that the expert testimony regarding the quantity of drugs suggested that the purpose of the possession was for distribution and not for personal use. Id. A federal court reviewing the sufficiency of the evidence on collateral attack must consider the evidence in the light most favorable to the prosecution and must presume that the jury resolved any conflicts

over the historical facts in the State's favor. <u>Wright,</u> 505 U.S. at 296; <u>Jackson,</u> 443 U.S. at 319. In finding Joppy guilty of possession with the intent to distribute, the jury could reasonably infer that the cocaine in the jacket pocket belonged to Joppy and was intended for distribution and not personal use. The Court of Special Appeals' conclusion is neither contrary to nor an unreasonable application of the <u>Jackson</u> standard.

**C.      Certificate of Appealability**

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." <u>Buck,</u> 137 S.Ct. at 773 (quoting 28 U.S.C. § 2253(c)(2)). Joppy "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>see</u> <u>Tennard v. Dretke,</u> 542 U.S. 274, 282 (2004) (citations omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," <u>Miller-El v. Cockrell,</u> 537 U.S. 322, 327 (2003) (citation omitted). Because this Court finds that there has been no substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. <u>See</u> 28 U.S.C. § 2253(c)(2). Joppy may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. <u>See</u> <u>Lyons v. Lee,</u> 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

### III.     <u>**CONCLUSION**</u>

For the foregoing reasons, Joppy's Petition for Writ of Habeas Corpus will be dismissed and a certificate of appealability will not be issued. A separate Order follows. Entered this 18th day of May, 2022.

_____/s/_____
George L. Russell, III
United States District Judge